

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

New Case Electronically Filed: COMPLAINT
May 29, 2022 22:09

By: DANIEL E. SHIELDS 0030979

Confirmation Nbr. 2562511

CONOR O'BOYLE                                             CV 22 964075

    vs.

                                         **Judge:** TIMOTHY MCCORMICK

CUYAHOGA COUNTY, ET AL

**Pages Filed:** 9

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| **CONOR O'BOYLE** | ) | CASE NO. |
| 2201 West 93rd St. Apt. 27 | ) | |
| Cleveland, Ohio 44102 | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| -vs- | ) | |
| | ) | |
| **CUYAHOGA COUNTY** | ) | COMPLAINT |
| c/o Cuyahoga County Department of Law | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | JURY DEMAND ENDORSED HEREIN |
| | ) | |
| **Armond Budish, Individually** | ) | |
| c/o Cuyahoga County Department of Law | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | |
| | ) | |
| **Cuyahoga County Sheriff** | ) | |
| **David G. Schilling, Jr. Individually** | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | |
| | ) | |
| **Cuyahoga County Safety Services** | ) | |
| **Director Shane Alex Pellom, Individually** | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | |
| | ) | |
| **DEPUTY SHERIFF Bruce Lourie,** | ) | |
| **Individually** | ) | |
| c/o Cuyahoga County Department of Law | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | |
| | ) | |
| **Defendant John Doe, Individually** | ) | |
| c/o Cuyahoga County Department of Law | ) | |
| 2079 East 9th Street | ) | |
| Cleveland, Ohio 44115 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. NATURE OF ACTION

1. This is a civil-rights action to address acts of unlawful violence, and violation of Plaintiff's constitutional rights to demonstrate, speak, and be free of unlawful and unjustified seizure. Although the actions Deputy Sheriff Bruce Lourie and/or John Doe Deputy Sheriff were the immediate cause of Plaintiff's injury, the Cuyahoga County Sheriff's Department has for an extended period lacked any significant supervision by the Sheriff, Safety Services Director, or the County executive, and therefore all are liable as well. This failure to supervise is the custom, policy, pattern and practice of Cuyahoga County.

2. Cuyahoga County Deputy Bruce Lourie and/or John Doe Deputy Sheriff shot Conor O'Boyle and others from an elevated perch of safety on the second floor of the Justice Center, during the May 30, 2020 Black Lives Matter protest in Cleveland, in which O'Boyle was a threat to no one. Defendant Lourie and/or John Doe Deputy Sheriff was untrained, apparently having never fired a beanbag rifle before that day, and fired with poor visibility at an excessive range. He fired at Conor O'Boyle without provocation or any justification in terms of protecting persons or property. Deputy Lourie and/or John Doe Deputy Sheriff treated Plaintiff O'Boyle like a firing-range target. This senseless violence seriously injured O'Boyle, who suffered from a wound to his head and arm.

## II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendants under R.C. 2305.01 and venue is proper in this Court under Civ. R. 3(B)(3) because the events giving rise to Plaintiff's claims took place in Cuyahoga County, Ohio.

## III. PARTIES

4. Plaintiff Conor O'Boyle was a resident of Cuyahoga County, Ohio during all times relevant to this action. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution and the laws of the State of Ohio.

5. Defendant Cuyahoga County is an Ohio political subdivision responsible for the Cuyahoga County Sherriff's Department.

6. Defendant Armond Budish is the Cuyahoga County Executive. At all times relevant to this complaint, he was responsible for the Sheriff's Department and its actions and was acting under color of state law. Budish has held the position of County Executive since January 1, 2015.

7. Defendant David G. Schilling, Jr. ("Schilling") was the Interim Cuyahoga County Sheriff on May 30, 2020, a position he had held since August 2019. At all times relevant to this complaint, he was responsible for the Sheriff's Department and its actions and was acting under the color of state law.

8. Defendant Shane Alex Pellom ("Pellom") was the Cuyahoga County Safety Serviced Director at all relevant times, was responsible for the actions of the Cuyahoga County Sheriff's Department and its actions, and was acting under the color of state law. Pellom has held the position as Safety Services Director from November 2018.

9. Defendant Deputy Sheriff Bruce Lourie ("Lourie"), at all times relevant, was a Deputy Sheriff with the Cuyahoga County Sheriff's Office and was acting under the color of state law. Lourie was hired as Deputy Sheriff in December 2001.

## IV.  FACTS

**A. The May 30, 2020 Protests in Cleveland, Ohio**

10. On May 30, 2020, protests to end police brutality assembled in the City of Cleveland. The City of Cleveland both expected and had advance notice of the protests.

11. The First Amendment to the United State Constitution guarantees the right to peacefully criticize the government through lawful and symbolic speech.

12. The First Amendment also prohibits a public official from retaliating against an individual exercising his or her First Amendments rights.

13. The Fourth Amendment to the United States Constitution guarantees the right to be free from excessive force by police.

14. Cuyahoga County has adopted customs, policies, patterns, and practices of abusing its officers' powers over citizens, both free and incarcerated, failing to properly train its employees with only the most minimal of policies regarding the use of non-lethal force, and has virtually no

policies regarding crowd control and support for peaceful demonstrations. The injuries inflicted upon O'Boyle were part and parcel of a long history of inhumane treatment of citizens by the Cuyahoga County Sheriff's Department and its officers. While this history starts inside of the Cleveland Justice Center and Jail, on May 30, 2020, it extended to the citizens outside of the jail's walls. Because the Cuyahoga County Sheriff's Department's treatment of citizens has long been evidenced through the failure of the county jail to provide even a modicum of protection to its inmates, that history is part and parcel of this lawsuit.

**B. Plaintiff O'Boyle's peaceful, law-abiding conduct on May 30, 2020**

15. On May 30, 2020, Plaintiff Conor O'Boyle was attending the Black Lives Matter Protest in downtown Cleveland. He felt strongly about justice for George Floyd and he wanted to have his voice heard in regards to social justice and police brutality.

16. Plaintiff met with several friends who were of like mind. They were Emma Jochum, Maggie White, Maggie's sister, and their friend Lauren Boo. They met prior to attending the rally and decided that they would take water along to be helpful to anyone in need.

17. They arrived at the Free Stamp located at the intersection of E. 9th St. and Lakeside where they peacefully listened to various speakers and activists.

18. Almost immediately, while passing water out to some of those attending the rally, other participants came to them bringing other supplies such as food, more water, and even medical supplies. Plaintiff's group became an area where hungry, tired or thirsty participants could seek assistance.

19. Eventually, the protesters moved westward to the Justice Center. Plaintiff and his group moved with them, and set up their supplies behind the Oliver Hazard Perry statue, across the street from the Justice Center.

20. During the next 20 - 30 minutes, they provided fruit and other food, and water and other beverages to anyone who asked. Other participants continued to bring O'Boyle's group supplies, because they saw that his group had created a hub for those who were in need.

21. After approximately a half hour, Plaintiff noticed a group of armed Sheriff's moving up W. 3rd St. from the north toward the Justice Center. As they approached the Justice Center, a line of officers, who had been stationed in front of the Justice Center, began firing tear gas into the crowd.

22. During the ensuing confusion, Plaintiff and his group heard many loud booms, saw smoke blanketing the area in front of the Justice Center and began seeing protesters retreating from the tear gas.

23. Plaintiff O'Boyle began delivering water to assist those protesters whose eyes were burning from the tear gas. They also moved their supplies farther behind the statue, and farther away from the Justice Center.

24. At all times, Plaintiff O'Boyle was exercising his rights in a peaceful, non-violent manner. He continued to assist all by delivering 3 - 4 bottles of water across the street, to those who were in front of the Justice Center.

25. Plaintiff O'Boyle took water to an individual who had been hit by a tear gas canister. He turned around, putting his hands in the air, hoping that the officers would see that he was merely assisting others, and began walking north, back towards his group.

26. When he was 20 - 30 feet away from the Justice Center, Plaintiff O'Boyle was hit from behind by a bean bag propelled from a gun. The bag hit him in the back of his head and his arm. The resulting force of the shot knocked him to the ground. He stood up and returned to his group, where his friends noticed that he was bleeding from the back of his head.

27. His friends helped him to an EMS ambulance on W. 3rd St. The EMT's advised him to go to the hospital, and he was taken by an ambulance to St. Vincent's Charity Hospital.

28. At the hospital, Plaintiff O'Boyle was seen and treated for lacerations on his head. He received several staples there to close the head wound. He was also treated for the contusion on his arm.

29. As a result of the violation of the Plaintiff's civil rights, Plaintiff suffered serious and lasting injuries, and out-of-pocket medical expenses.

V. LAW AND ARGUMENT

**A. Defendants Lack of Training Led to the Violation of Plaintiff's Constitutional Rights**

30. Plaintiff incorporates all previous allegations.

31. Plaintiff brings this Civil Rights Action to secure fair compensation for his injuries, lost future wages, and for non-economic relief meant to discourage the Defendants from violating citizens' constitutional rights.

32. The violation of Plaintiff's First and Fourth Amendment rights occurred because Defendants Cuyahoga County, County Administrator Budish, Sheriff Shilling, and Safety Services Director Pellom (the three being the "Policymaking Defendants") failed to have adequate policies and procedures to ensure the protesters' constitutional rights were not violated, for failure to train and supervise, and for other particular reasons as alleged in this complaint.

33. Instead of protecting Plaintiff's constitutional rights, Defendants Cuyahoga County and the Policymaking Defendants authorized and implements unconstitutional policies regarding protesters exercising their First Amendment rights.

34. The violation of Plaintiff's First and Fourth Amendment rights occurred because the Policymaking Defendants failed to supervise and train deputy sheriffs, including Deputy Lourie and/or Defendant John Doe not to retaliate or use excessive force against individuals exercising their First Amendment rights during protests.

35. The training and supervision in Policymaking Defendants provided was deliberately indifferent to the safety of citizens, including citizens like Plaintiff Conor O'Boyle.

36. Policymaking Defendants' failures, especially when combined with the long history of excessive force by Sheriff's Department employees at the County jail, constituted a pattern and practice, and a custom of tolerance, a custom of inaction, a custom of ratification and were the moving force behind the constitutional violations suffered by Plaintiff Conor O'Boyle.

37. Following the events of may 30, 2020, Cuyahoga County Sheriff David Schilling released the Department's "After Action Report" dated October 5, 2020. Among the conclusions contained in the report was a determination "that CCSD deputies would benefit from additional training on issues resulting from responding to mass gatherings. CCSD personnel are currently participating in a Cuyahoga Community College training program for law enforcement. This is additional graining on crisis interventions, de-escalation tactics, and managing emergency operation during mass gathering, protests and riots."

38. The Cuyahoga County Sheriff's Department's actions on May 30, 2020, using flash-bang devices, tear gas, and non-lethal weapons were deployed in such a way as to agitate rather than control the crowd. As many that day observed, it was the Sheriff's Department that was rioting, at least in part. The Department did to because it lacked a policy regarding how to approach crowd control so as to not exacerbate matters. For example, it is the policy of the Cleveland Division of Police that "when contemplating any use of force in a *civil disturbance* event, consideration should be given to what impact the use of force may have on the dynamics

of the crowd, including the possibility of further agitating the group." Crowd Management and Munitions, page 3 (emphasis in original).

### B. Defendants Utilized Bean Bag Rounds at Close Range Despite Knowing the Dangers and Risks of Using that Style of Deterrence.

39. Beanbag rounds have existed for many years. Their use is quite controversial and, even the manufacturer places strict limits on the circumstances in which the use of beanbag rounds is deemed appropriate.

40. The specific risks of the use of beanbag rounds are well-known. Targeting the face or head can result in serious injury or death. As a result, the manufacturer's recommendation and most if not all law-enforcement agencies that have developed policies regarding the use of beanbag rounds require targeting the lower legs and prohibit firing at the face or head.

41. The manufacturer's recommendations and other law-enforcement policies, also prohibit the use of beanbag rounds from an elevated position because of the increased risk of striking the face or head. As the United Nations has stated, "the firing of kinetic impact projectiles from the air or from an elevated position, such as during an assembly, is likely to increase their risk of striking protestors in the head." 7.5.3 Guidance on Less Lethal Weapons in Law Enforcement, united Nations Human Rights Commissioner, 2020.

42. In this case, Plaintiff Conor O'Boyle was within 20 feet of the Justice Center when he was shot. At that time, the Sheriffs were stationed above the grass and on an elevated portion of the Justice Center walkway. It was because of this elevation, and the fact that the Sheriffs did not follow set policies in firing the beanbag projectile, that Plaintiff Conor O'Boyle was injured.

## VI. CLAIMS

43. Plaintiff Conor O'Boyle incorporates all previous allegations.

44. As a direct and proximate result of these Defendants intentional, knowing, and purposeful conduct, which showed a spirit of wanton disregard of Mr. O'Boyle's rights, Mr. O'Boyle has suffered and will continue to suffer economic and non-economic damages for which this Defendant is liable, including, but not limited to physical, mental, emotional, pain and suffering as well as punitive damages.

45. The Defendants acts were willful, egregious, malicious, and worthy of substantial sanctions to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## VII. PRAYER FOR RELIEF

For the reasons stated, Mr. O'Boyle respectfully requests the following relief from the Court:

A. Declare that Defendants' acts and conduct constitute violations of the Fourteenth Amendment to the United States Constitution, as well as of 42 U.S.C. § 1983 and state law;

B. Enter judgment in Mr. O'Boyle's favor on all claims for relief;

C. Award full compensatory damages including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that Mr. O'Boyle has suffered and is reasonably certain to suffer in the future;

D. Award punitive and exemplary damages for the Defendant's egregious, willful, and malicious conduct.

E. Award pre- and post-judgment interest at the highest lawful rate;

F. Award Mr. O'Boyle his reasonable attorneys' fees and all other costs of the suite; and

F. Award all other relief in law or equity, including injunctive relief, to which Mr. O'Boyle is entitled and that the Court deems equitable, just, and proper.

## JURY DEMAND

Pursuant to Rule 38(B) of the Ohio Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues in this action triable by a jury.

Respectfully submitted,

*/s/ Daniel E. Shields*
DANIEL E. SHIELDS, ESQ.
#0030979

1501 Westwood
Lakewood, Ohio 44107
(216) 221-2889
Attorney for Plaintiff